*Exhibit A*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| vs. | Case No. |
| KAY X. YANG, and XAPPHIRE LLC, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| CHAO YANG, | |
| Relief Defendant. | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC") alleges as follows:

### Nature of the Case

1.  Between April 2017 and April 2021, Defendant Kay X. Yang conducted a fraudulent investment scheme targeting members of the Hmong-American communities in Wisconsin and Minnesota.

2.  Yang raised approximately $16.5 million from investors through the unregistered offer and sale of securities issued by two entities she controlled: AK Equity Group LLC ("AK Equity") and Xapphire Fund LLC ("Xapphire Fund").

3.  Yang conducted the Xapphire Fund offering through Defendant Xapphire LLC ("Xapphire"), a management entity that Yang helped create and controls.

4.      In both the AK Equity and Xapphire Fund offerings, Yang made a number of misrepresentations to investors, including: (a) she would use investor money "primarily" in foreign exchange trading; (b) investors would earn between 20% and 50% each year on their investments; and (c) her foreign exchange trading had been consistently successful.

5.      Each of these representations was false. In reality, Yang used less than half of the investors' money for foreign exchange trading -- and she consistently lost money in foreign exchange trading.

6.      In addition, Yang diverted and misappropriated 25% of her investors' contributions, approximately $4 million, in order to benefit herself and her family. Yang and her husband used investor money to pay personal expenses, which included gambling and cash withdrawals at casinos, real estate, extensive travel, luxury automobiles, and the repayment of certain investors from a previous venture.

7.      From this same amount, Yang diverted at least $800,000 in investor contributions to her husband, Chao Yang, who had no right to receive these investor funds.

8.      Yang's fraudulent scheme now has collapsed, and most of her investors did not receive anything close to their promised returns, let alone the return of their principal investments. Some have even lost their entire investment. But Yang has continued to raise additional funds for a new investment vehicle that she has described as "Xapphire G Fund."

9.      Defendants Yang and Xapphire knowingly or recklessly made, or substantially participated in making, misrepresentations and omissions of material fact regarding the investment funds at issue. Defendants also breached their fiduciary duties, and knowingly or recklessly failed to manage AK Equity and the Xapphire fund in the manner disclosed to

Case 2:22-cv-00450-JPS   Filed 04/13/22   Page 2 of 31   Document 1
Case 2:22-cv-00450-JPS   Filed 10/18/22   Page 2 of 23   Document 34-1

investors. Defendants' conduct involved fraud, deceit, and/or the deliberate or reckless disregard of regulatory requirements, and resulted in substantial investor losses.

10. Accordingly, Defendants Yang and Xapphire violated the federal securities laws, including Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act").

11. Defendants Yang and Xapphire should be permanently enjoined from future violations of the federal securities laws, and should be ordered to disgorge all of their ill-gotten gains, on a joint and several basis, along with prejudgment interest. The Court also should require the Defendants to pay significant civil penalties, and preclude Yang from serving as an officer or director of a public company.

### Jurisdiction and Venue

12. The Court has jurisdiction over this civil enforcement action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, Sections 21(a), and 27(a) of the Exchange Act, and Sections 209(d), 209(e) and 214(a) of the Advisers Act.

13. Venue is proper in this District, pursuant to Section 22(a) of the Securities Act Section 27(a) of the Exchange Act, and Section 214(a) of the Advisers Act, because the Defendants currently reside or transact business in this District, and many of the acts and transactions constituting the securities violations alleged herein occurred within this District.

14. In connection with the conduct alleged in this Complaint, Defendants have directly and indirectly made use of the mails and/or means or instrumentalities of transportation or communication in interstate commerce.

## The Defendants

15    **Kay X. Yang** is 40 years old and resides in Mequon, Wisconsin. She is the

founder and owner of AK Equity and Xapphire Fund. Yang is a former tax return preparer, but

has never been a CPA. Yang has never been licensed by a securities regulator. Yang asserted

her Fifth Amendment privilege against self-incrimination in response to certain subpoenas for

documents, and has failed to appear for testimony, during the SEC's investigation in this matter.

16.    **Xapphire LLC** is a Delaware limited liability company formed in December

2018 with its principal place of business in Mequon, Wisconsin. Yang is the CEO and co-

founder of Xapphire, and controls all of its operations. Yang's brother is a co-founder of

Xapphire and serves as one of its directors. Xapphire is the managing member of the Xapphire

Fund.

## The Relief Defendant

17.    **Chao Yang** is 47 years old and is a resident of Mequon, Wisconsin. Chao Yang

is Kay Yang's husband and personally received at least $800,000 of investor money.

## Related Parties

18.    **AK Equity Group LLC** was a Delaware limited liability company formed in

March 2017 with its principal place of business in Mequon, Wisconsin. Yang both owned and

controlled AK Equity, and she voluntarily withdrew its status as a Delaware company in 2021.

AK Equity was formed for the purpose of conducting foreign exchange trading using pooled

money obtained from multiple investors.

19.    **Xapphire Fund LLC** is a Delaware limited liability company formed in

December 2018 with its principal place of business in Mequon, Wisconsin. Yang is the

Xapphire Fund's CEO and founder. The Xapphire Fund's private placement memorandum

4

("PPM") described it as "a hedge fund initially investing in currencies, via the Foreign Exchange."

## Allegations of Fact

20.     From approximately April 2017 through April 2021, Yang raised at least $16.5 million from approximately 70 investors through two fraudulent offerings, consisting of the offer and sale of:  (a) investment contracts issued by AK Equity, and (b) membership interests in the Xapphire Fund.  Neither of these offerings was registered with the Commission.

21.     Yang's investors are residents of at least eight states, and a majority of them are members of the Hmong-American communities in Wisconsin and Minnesota.  Some of these investors do not speak English as a first language, and some of them were not sophisticated investors.

22.     Yang solicited investors through a publicly available website, in-person meetings at her Wisconsin home and at other events in Wisconsin and Minnesota.  Yang also relied on word-of-mouth recommendations within the Hmong-American community.

23.     At all times described in this Complaint, both Yang and Xapphire acted as investment advisers within the meaning of Advisers Act Section 202(a)(11) [15 U.S.C. § 80b-2(a)(11)].

### A.     The AK Equity Offering

24.     In April 2017, Yang began raising money from investors through the AK Equity offering.  Most AK Equity investors signed a limited power of attorney form appointing AK Equity to act as an agent to purchase and sell foreign exchange contracts.

25.     The forms used by Yang stated that investors would have their own AK Equity trading account, and would receive a *pro-rata* share of profits from AK Equity's managed

5

trading account. However, Yang opened trading accounts only in her name and the name of her corporate entities. She did not open any trading accounts in the name of individual investors, and investors were not able to access the trading accounts.

26.     Yang told investors that she would invest their money mainly in foreign exchange trading, but that she also could use her discretion to invest in securities. Yang also told at least two investors that she would invest their money in stocks.

27.     Yang provided certain investors, before accepting their investments, with AK Equity hand-outs stating that the first $5 million in contributions would be allocated to "100% Forex." However, this same document also stated that after AK Equity's assets exceeded $5 million, it would invest at least 40% of its capital in securities; and, after AK Equity's capitalization exceeded $15 million, securities would comprise 80% of its assets.

28.     Yang told investors that their contributions would be pooled with those of other investors to increase their trading power. Although Yang did commingle investor contributions, she only used some of the investors' contributions for foreign currency trading.

29.     Yang distributed an AK Equity hand-out to at least three investors in late 2018, before accepting their investments, which contained a chart representing AK Equity's monthly investment results during 2018. The document purported to show that, from January to August 2018, AK Equity's results were positive, with monthly returns ranging from 0.98% to 8.7%.

30.     Yang also told AK Equity investors, both orally and in writing, that AK Equity would be paid 35% of the monthly profits generated by their trading, as well as a 2% annual fee on the assets under management. However, for certain clients, Yang agreed to a lower rate for one or both fees.

31.     From 2017 to 2019, Yang raised approximately $14 million for AK Equity from approximately 50 investors.

**B.     The Xapphire Fund Offering**

32.     In late 2018, Yang launched the Xapphire Fund, which she managed through Xapphire, an entity she controlled. Yang told the investors in AK Equity that their investment would be "rolled over" into Xapphire Fund, and that her share of the fund's monthly profits would be reduced from 35% to 10%. In all other respects, their investments would continue unchanged.

33.     From 2019 to 2021 Yang raised approximately $2.5 million for the Xapphire Fund. Yang obtained these funds from approximately 22 new investors, as well as from 12 investors who previously had invested in AK Equity.

34.     Yang made representations to Xapphire Fund investors, both orally and through documents, including: a PPM, a subscription agreement and other offering documents. Yang told investors that they were purchasing membership interests in the Xapphire Fund, which would invest "primarily" in foreign currencies.

35.     The Xapphire Fund's PPM also stated the fund would achieve its investment objectives by also investing in equity and debt securities. In addition, the PPM stated that Xapphire retained complete control over the Xapphire Fund's management and operations.

36.     Yang also represented to Xapphire Fund investors, both orally and in offering documents, that their money would be pooled with those of other investors.

37.     Yang represented to investors that Xapphire would be paid 10% of the profits generated by their trading, as well as a 2% annual fee on the assets under management. However, for certain clients, Yang agreed to a lower rate for one or both fees.

7

38.     The Xapphire hand-out also included a chart, similar in appearance to the AK

Equity hand-out, purporting to show a positive gross profit for every month in 2018.  At least

three of the AK Equity investors also received the Xapphire hand-out prior to making

investments in the Xapphire Fund.

**C.     Yang Misappropriated Investor Money**

39.     Yang raised approximately $16.5 million from investors in AK Equity and the

Xapphire Fund, and those contributions were commingled in a number of accounts she

controlled.

40.     Yang used these investor contributions in a number of ways, including:

(a)     approximately $7.1 million in investor contributions was used in foreign

        exchange trading, incurring approximately $3.5 million in trading losses,

        commissions and fees;

(b)     approximately $3.3 million in investor contributions was used to pay business

        expenses, including legal expenses, office operation expenses, and website

        expenses;

(c)     approximately $2.7 million in investor contributions was repaid to investors in

        AK Equity or the Xapphire Fund; and

(d)      approximately $400,000 in investor contributions was used to repay investors in

        a previous venture.

41.     Yang used at least $4.5 million in investor contributions, or more than 25% of the

total amount raised in both offerings, to benefit herself or members of her family.  Yang spent

some investor contributions directly from AK Equity or Xapphire bank accounts, and transferred

other investor contributions to her own personal accounts or to the accounts of other businesses

Yang and her husband controlled. From this same amount, Yang also transferred at least $800,000 in investor contributions to Chao Yang, who had no right to receive these funds.

42.     Yang and her husband used more than $3 million in investor contributions to pay for real estate, living expenses, travel and luxury automobiles. More specifically, between April 2017 and June 2021 they spent:

(a)     nearly $1.5 million on residential real estate, including: $716,000 on her own home in Mequon, Wisconsin which was purchased in 2018; $259,900 on a home in Zimmerman, Minnesota purchased in 2019; $223,191 for a home in Sheboygan, Wisconsin purchased in 2018, and $261,871 for a home in Saukville, Wisconsin purchased in 2019;

(b)     more than $790,000 for her family's living expenses, including: nearly $70,000 for restaurants, more than $46,000 to Amazon, $27,500 to Columbia College in Chicago, $20,000 to Sam's Club, and thousands of dollars more for landscaping and lawn care, housecleaning services, BTS concert tickets, pet stores, spa services, grocery stores, and other retailers, including Gucci, Louis Vuitton, Kay Jewelers, Wayfair, Target and Home Depot;

(c)     around $585,000 on personal and family travel, including: at least $110,000 for a trip with 60 guests referred to as "Kay's Family Trip to Maui" in June 2018; at least $80,000 for a trip with more than 20 guests to Bangkok, Thailand in June 2019; at least $52,000 for a Royal Caribbean cruise in February 2019; and trips to a number of other locations including Cancun, Mexico and Las Vegas, Nevada; and

9

(d)     approximately $313,000 on luxury cars for herself and her husband, including:  a 2019 Lexus NX 300 purchased in August 2018, a 2018 Tesla Model S purchased June 2018, a 2019 BMW i8 purchased March 2019, and a 2019 BMW X7 purchased in March 2019.

43.     In addition, between April 2017 and April 2021, Kay and Chao Yang withdrew approximately $1.4 million from investor funds, in more than 1,000 separate transactions, including cash withdrawals using automatic teller machines ("ATMs") debit cards, and cash advances on credit cards.  Kay and Chao Yang used some of those funds for gambling, and spent the remainder for their own personal benefit.

44.     The Yangs made these cash withdrawals, and spent investor funds, in a number of different gaming establishments, including:  the Potawatomi Hotel and Casino (Milwaukee), Ho-Chunk Gaming (Black River Falls), Ho-Chunk Gaming (Wisconsin Dells), Luxor Hotel and Casino (Las Vegas), Bally's Las Vegas Casino, MGM Grand Hotel and Casino (Las Vegas), Paris Las Vegas Hotel and Casino, Bellagio Hotel and Casino (Las Vegas), Atlantis Paradise Island Casino, Sahara Las Vegas Casino, Borgata Hotel and Casino (Atlantic City), Planet Hollywood Casino, New York Hotel and Casino, Seminole Hard Rock Hotel and Casino, Stratosphere Hotel and Casino, Hard Rock Hotel and Casino (Lake Tahoe), Beau Rivage Resort and Casino (Biloxi), Rivers Casino (Des Plaines), Grand Sierra Resort and Casino, Pechanga Resort Casino and Table Mountain Casino.

45.     Based on the total amount of investor funds that Yang and her husband withdrew at casinos or used to pay for their personal expenses, plus the amounts that Yang used to repay prior investors in a previous venture, Yang illegally misappropriated at least $4,060,000 in investor funds.

**D.    Yang Misrepresented the Performance of AK Equity and the Xapphire Fund.**

46.    Yang repeatedly told investors that the returns achieved by AK Equity and Xapphire Fund were profitable and performing well.  From late 2018 to 2019, Yang provided AK Equity investors with offering materials showing that AK Equity's foreign exchange trading achieved positive monthly returns between January through August 2018.  At least three individuals invested after receiving an AK Equity hand-out containing these representations.

47.    These representations were false.  AK Equity actually experienced monthly trading losses in January, February, May, June and August 2018.  (AK Equity did not have any trading activity in March or April 2018.)

48.    In 2019, Yang represented in offering materials to Xapphire Fund investors that the Xapphire Fund's foreign exchange trading achieved positive monthly returns in every month during 2018; the materials also told investors they could expect annual returns of between 20% and 40%.  These representations were false, for several reasons.

49.    First, the Xapphire Fund did not exist until December 2018, and did not have a trading account in its own name until April 2019.  So the 2018 results presented in the Xapphire hand-out could not have been the returns generated by the Xapphire Fund.

50.    Second, the results presented in the Xapphire hand-out did not refer to AK Equity's trading results.  As noted, AK Equity experienced monthly losses in January, February, May, June and August 2018, and had no trading activity in March or April 2018.  AK Equity also lost money in November and December 2018.

51.    Third, Yang had never achieved annual positive trading gains of between 20% and 40%.  In 2017, Yang's trading in AK Equity resulted in a net loss of approximately

11

$150,000. And in 2018, Yang's monthly trading losses exceeded monthly trading gains by approximately $606,000.

52.     In or about December 2018, Yang told prospective AK Equity investors, during an in-person meeting, that AK Equity was generating annual profits of between 40% and 50%. Yang repeated these same misrepresentations to an AK Equity investor during a March 2019 meeting at her home.  These representations were false.  As of the time Yang made these statements, AK Equity had never had a year with positive trading results, let alone a year with gains of between 40% and 50% returns.

53.     Several of the investors who invested in AK Equity after attending meetings with Yang in December 2018 and March 2019 subsequently invested in the Xapphire Fund; they were told that their initial AK Equity investments were "rolled over" into Xapphire Fund.

54.     From 2017 to approximately 2020, Yang provided AK Equity and Xapphire investors with access to on-line statements showing personal account balances.  Several of these investors have advised SEC investigators that all of those statements showed their personal investments were profitable and increasing in value.

55.     For example, one investor stated that according to the on-line statements, the value of his account had increased between 30% and 50%.  Another investor stated that according to the on-line statements, the value of his account had doubled within one year; another investor stated that his on-line account statements showed that the value of his account had tripled within three years.  Two of these investors made additional contributions after seeing the purported profitable performance of their investment accounts.

56.     The on-line account statements that Yang provided to investors were false. None of the investment accounts which Yang opened for AK Equity or the Xapphire Fund ever achieved annual positive returns.

**E.      The Wisconsin Order**

57.     On July 13, 2020, the Wisconsin Department of Financial Institutions, Division of Securities, issued a Final Order by Consent to Cease and Desist, Revoking Exemptions, and Imposing Disgorgement, Restitution, and Civil Penalties against Yang, AK Equity, the Xapphire Fund and Xapphire (the "Wisconsin Order").

58.     The Wisconsin Order contained a number of findings of fact, to which Yang and Xapphire consented, including that none of them were registered with the Wisconsin Division of Securities in any capacity and had failed to disclose this fact to investors.

59.     The Wisconsin Order found that Yang, AK Equity Group and Xapphire had violated Wisconsin law by raising millions of dollars from investors while failing to register as investment advisers.

60.     The Wisconsin Order required Yang to pay $16,950,777 in restitution to her investors, disgorge up to $4,231,998 in profits, and pay a $50,000 civil penalty. However, to date Yang has not paid the amounts she owes.

**F.      Defendants Cannot Repay AK Equity and Xapphire Fund Investors.**

61.     Following the issuance of the Wisconsin Order, an increasing number of Yang's investors have attempted to withdraw their principal contributions or purported profits from AK Equity or the Xapphire Fund.

13

62. Yang has delayed or avoided complying with many of those requests by offering investors a variety of excuses. Yang has returned some money to a few investors, but has denied repayment requests from others.

63. The most recent investor repayment by AK Equity or Xapphire which could be confirmed by SEC investigators occurred in January 2021 and was in the amount of $7,000. Since then, Yang has refused or been unable to comply with the repayment requests made by many investors.

64. Yang has ceased all communications with most of her investors. However, Yang continues to reassure those AK Equity and the Xapphire Fund investors with whom she still communicates that their money is safe, and that they "don't need to worry" because repayments will be forthcoming. She also stated that she had "plenty of funds" to cover distributions and continues trading.

65. Yang's representations about her ability to repay investors are false. The SEC has obtained and reviewed bank account and brokerage account records for both Kay and Chao Yang, and for AK Equity, Xapphire, and the Xapphire Fund. None of those accounts has any significant remaining balances, either in cash, foreign currency or securities.

### G. Yang Has Continued to Raise Funds for a New Venture and Misrepresent Her Prior Activities

66. Despite all of the losses in foreign exchange trading in AK Equity and the Xapphire Fund, described above, Yang has continued to raise additional funds from the Hmong-American communities in Wisconsin and Minnesota.

67. More specifically, Yang has raised millions of dollars from investors for a new investment vehicle that she has described as "Xapphire G Fund." According to investors, Yang

14

has described this investment vehicle as foreign exchange trading, similar to AK Equity and the Xapphire Fund.

68.     The SEC has confirmed that Yang is using offshore bank and brokerage accounts for her Xapphire G venture.  However, to date the SEC has been unable to obtain sufficient investment documents, trading records or account statements, either from Yang or Xapphire G investors, to determine whether Xapphire G is a real investment fund or a fraud.

69.     Although Yang has produced some documents in response to SEC subpoenas, in July 2021 Yang asserted her Fifth Amendment privilege against producing additional documents and providing sworn testimony to the SEC.  The SEC has subpoenaed both Yang and Chao Yang to testify about AK Equity, the Xapphire Fund and the use of funds raised by investors.  Neither Yang nor Chao Yang has appeared to testify.

70.     In response to an SEC subpoena, Yang produced what she claimed were account statements from a foreign brokerage company, known as LMAX, showing mostly profitable trading during 2019.  However, these account statements were fake; some had been altered to inflate the monthly profits or to show a much smaller monthly loss than her actual trading results.  Yang actually incurred more than $2 million in losses while trading through LMAX during 2019.

71.     On February 23, 2022, the U.S. District Court for the Eastern District of Wisconsin issued a warrant authorizing a search of Kay and Chao Yang's home in Mequon, Wisconsin for financial and computer records relating to AK Equity, Xapphire, the Xapphire Fund, and the Xapphire G Fund.  The warrant's supporting declaration, which is publicly available through this court's website, attests that Yang received more than $15 million for investment purposes, based on false or inaccurate disclosures, that Yang used a portion of those

funds for foreign exchange trading and incurred significant losses, and that Yang spent millions of dollars in investor funds on gambling, as well as on purchases for herself and her family.

## COUNT I

### *Violations of Section 5(a) and (c) of the Securities Act*
### (Against Defendants Yang and Xapphire)

72.     Paragraphs 1 through 71 are realleged and incorporated herein by reference.

73.     By engaging in the conduct described above, Defendants Yang and Xapphire directly or indirectly: (a) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (b) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and (c) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

74.     By reason of the foregoing, Defendants Yang and Xapphire violated Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)].

## COUNT II

### *Violations of Section 17(a) of the Securities Act*
### (Against Defendants Yang and Xapphire)

75.     The SEC realleges and incorporates by reference paragraphs 1 through 71 as if fully set forth herein.

16

76.     By engaging in the conduct described above, Defendants Yang and Xapphire, in the offer or sale of securities, by use of the means or instruments of interstate commerce or of the mails directly or indirectly has:

    (a)  employed devices, schemes and artifices to defraud;

    (b)  obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    (c)  engaged in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon purchasers or prospective purchasers.

77.     Defendants acted intentionally, with severe recklessness and at least negligently in the fraudulent conduct described above.

78.     By reason of the foregoing, Defendants Yang and Xapphire violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)(1)-(3)].

## COUNT III

### *Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder*
### **(Against Defendants Yang and Xapphire)**

79.     The SEC realleges and incorporates by reference paragraphs 1 through 71 as if fully set forth herein.

80.     Defendants Yang and Xapphire, in connection with the purchase and sale of securities, by the use of the means and instruments of interstate commerce and by the use of the mails, directly or indirectly:  (a) used and employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made,  in light of the circumstances under which they were made, not

17

misleading; and (c) engaged in acts, practices, and courses of business which operated or would have operated as a fraud and deceit upon purchasers and prospective purchasers of securities.

81.    Defendants acted with *scienter* in that they knowingly or with severe recklessness made the material misrepresentations and omissions and engaged in the fraudulent conduct and/or scheme described above.

82.    By reason of the foregoing, Defendants Yang and Xapphire violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

**COUNT IV**

*Violation of Sections 206(1) and 206(2) of the Advisers Act*
**(Against Defendants Yang and Xapphire)**

83.    The SEC realleges and incorporates by reference paragraphs 1 through 71 as if fully set forth herein.

84.    At all relevant times, Defendants Yang and Xapphire each acted as an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].  Yang owed AK Equity and the Xapphire Fund a fiduciary duty of utmost good faith and had an affirmative duty to make full and fair disclosure of all material facts, as well as a duty to act in the funds' best interests.

85.    Defendant Xapphire owed the Xapphire Fund a fiduciary duty of utmost good faith and had an affirmative duty to make full and fair disclosure of all material facts, as well as a duty to act in the fund's best interests.

86.    While acting as investment advisers, through use of the mails or means or instrumentalities of interstate commerce, Defendants Yang and Xapphire, directly or indirectly, singularly or in concert:  (1) employed devices, schemes, and artifices to defraud a client or

18

clients or prospective clients; and (2) engaged in transactions, practices, and courses of business which operated as a fraud or deceit upon a client or clients or prospective clients.

87.     Defendants Yang and Xapphire acted knowingly, recklessly and/or negligently by: (a) making misrepresentations of material fact, and failing to provide full disclosures of fact, to AK Equity and its investors, and to the Xapphire Fund and its advisory clients; and (b) failing to act with reasonable care to avoid misleading AK Equity and its investors, and the Xapphire Fund and its advisory clients, regarding Yang's misuse of investor contributions, her unsuccessful track record in foreign exchange trading, and her extensive monthly trading losses.

88.     By reason of the foregoing, Defendants Yang and Xapphire have violated Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

## COUNT V

### (Against Relief Defendant Chao Yang)

89.     Paragraphs 1 through 71 are realleged and incorporated by reference as if fully set forth herein.

90.     Relief Defendant Chao Yang received improper and illegal transfers of investor money from the Defendants, even though he had no right to receive any investor funds.

91.     By reason of the foregoing, Relief Defendant Chao has been unjustly enriched and may be compelled to return any investor funds he still holds, and may be found liable in joint and several liability with the Defendants for all of the transfers of funds he received.

# RELIEF REQUESTED

**WHEREFORE**, the SEC respectfully requests that this Court:

## I

Find that the Defendants committed the violations alleged herein:

## II

Issue permanent injunctive orders restraining and enjoining the Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them, who receive actual notice of the injunction by personal service or otherwise, from violating Sections 5(a) and (c) and 17(a) of the Securities Act [15 U.S.C. § 77e(a) and (c), § 77q(a)], Section 10(b) of the Exchange Act and Rule 10b-5 thereunder [15 U.S.C. § 78j(b), 17 C.F.R. 240.10b-5] and Sections 206(1) and 206(2) of the Investment Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2)].

## III

Enter an order pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], prohibiting defendant Kay Yang from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## IV

Order the Defendants to disgorge their ill-gotten gains, received as a result of the violations alleged in this Complaint, under Section 21(d)(7) of the Exchange Act [15 U.S.C. § 78u(d)(7)], on a joint and several basis, along with prejudgment interest.

20

V

Ordering the Defendants to pay civil monetary penalties under Section 20(d) of the

Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. §

78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

VI

Retain jurisdiction of this action in accordance with the principles of equity and the

Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and

decrees that may be entered or to entertain any suitable application or motion for additional relief

within the jurisdiction of this Court.

VII

Grant such other and further relief as may be necessary and appropriate.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the SEC hereby requests a

trial by jury.

By: */s/Robert M. Moye*

Robert M. Moye (moyer@sec.gov)
BeLinda I. Mathie (mathieb@sec.gov)
U.S. Securities and Exchange Commission
Chicago Regional Office
175 West Jackson Boulevard, Suite 1450
Chicago, Illinois 60604
(312) 353-7390

*Attorneys for the Plaintiff*

JS 44 (Rev 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box (required): ☐ Green Bay Division  ☒ Milwaukee Division

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States Securities and Exchange Commission | Kay X. Yang, Defendant<br>Xapphire LLC, Defendant<br>Chao Yang, Relief Defendant |

**(b)** County of Residence of First Listed Plaintiff  N/A
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Ozaukee
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
U.S. Securities and Exchange Commission, Robert M. Moye, BeLinda I. Mathie, 175 West Jackson Boulevard, Suite 1450, Chicago, IL 60604, (312) 353-7390

Attorneys *(If Known)*
Jack Burkman, JM Burkman & Associates, LLC, 1629 K Street NW, #300, Washington, DC 20006, (202) 888-3071

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☒ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer w/Disabilities - Employment<br>☐ 446 Amer w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. Section 78j(b)
Brief description of cause:
Securities Fraud

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See updated instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  04/13/2022

SIGNATURE OF ATTORNEY OF RECORD  /s/Robert M. Moye

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending and previously filed cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases and file a Notice of Related Action pursuant to Civil L.R. 3(b).

**Date and Attorney Signature.** Date and sign the civil cover sheet.